**LAGOMARSINO LAW**
ANDRE M. LAGOMARSINO, ESQ. (#6711)
CORY M. FORD, ESQ. (#15042)
3005 W. Horizon Ridge Pkwy., #241
Henderson, Nevada 89052
Telephone: (702) 383-2864
Facsimile: (702) 383-0065
AML@lagomarsinolaw.com
Cory@lagomarsinolaw.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SARAH KIM NGUYEN, individually; <br><br> Plaintiffs, <br><br> vs. <br><br> LANE F. SMITH, M.D., individually; SMITH SALON, LLC dba Chic La Vie, a Limited-Liability Company; SMITH PLASTIC SURGERY INSTITUTE, PC, a Professional Corporation; SMITH PLASTIC SURGERY BUILDING LLC, a Limited-Liability Company; ROE ENTITIES I – V, inclusive, <br><br> Defendants. | CASE NO.: <br><br> **COMPLAINT** <br> **AND JURY DEMAND** |

COMES NOW Plaintiff SARAH KIM NGUYEN, by and through her counsel of record ANDRE M. LAGOMARSINO, ESQ. and CORY M. FORD, ESQ. of LAGOMARSINO LAW, and hereby submits the following *Complaint and Jury Demand* with this Honorable Court.

## JURISDICTION AND VENUE

1. This action is brought to remedy violations of the Plaintiff's rights under the laws of the United States of America, including Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII") and the laws of the State of Nevada.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to Title VII. This Court also has supplemental

1 jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

2  3. Personal jurisdiction and venue are appropriate pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391, since Defendants conduct their affairs in this district, and the unlawful conduct complained of herein occurred in this district.

4. All procedural prerequisites for filing this suit have been met. Plaintiff SARAH KIM NGUYEN timely filed a Charge of Discrimination alleging discrimination and retaliation against Defendants with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff was issued a Right to Sue from the EEOC on November 16, 2020. This Complaint and Jury Demand is being filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

**PARTIES**

5. At all times relevant herein, Plaintiff SARAH KIM NGUYEN (hereinafter "NGUYEN") was, and is, a resident of Clark County, Nevada and subject to the unlawful actions of the Defendants described herein.

6. Upon information and belief, Defendant LANE F. SMITH, M.D. (hereinafter "DR. SMITH" or "Defendant") was, and is, a resident of Clark County, Nevada.

7. At all times relevant herein, SMITH SALON, LLC dba Chic La Vie (hereinafter "Chic La Vie") was, and is, a domestic limited-liability company, organized and existing by virtue of the laws of the state of Nevada and doing business in Clark County, Nevada.

8. At all times relevant herein, SMITH PLASTIC SURGERY INSTITUTE, PC (hereinafter "SPSI, PC") was, and is, a professional corporation, organized and existing by virtue of the laws of the state of Nevada and doing business in Clark County, Nevada.

9. At all times relevant herein, SMITH PLASTIC SURGERY BUILDING LLC (hereinafter "SPSB LLC") was, and is, a domestic limited-liability company, organized and existing by virtue of the laws of the state of Nevada and doing business in Clark County, Nevada.

. . .

10. At all times relevant herein, DR. SMITH was, and is, the owner of Chic La Vie, SPSI, PC, and SPSB LLC (hereinafter "ENTITY DEFENDANTS"). Upon information and belief, DR. SMITH's office has a "Surgical" and "Med Spa" side which consists of these ENTITY DEFENDANTS.

11. At all times relevant herein, Plaintiff was an "employee" as defined by Title VII.

12. At all times relevant herein, Plaintiff was employed by and between Defendants.

13. Defendants were Plaintiff's "employer" for purposes of the claims set forth herein.

14. At all relevant times herein, ENTITY DEFENDANTS were covered entities pursuant to 42 U.S.C. § 12111(2).

15. Upon information and belief, Defendants employed fifteen (15) or more employees during all of the relevant time periods, and therefore are, and have been, an "employer" as defined by Title VII during all of the relevant time periods.

## GENERAL ALLEGATIONS

16. Paragraphs 1 through 15 are specifically included and incorporated as though fully set forth herein.

17. Plaintiff NGUYEN began working for ENTITY DEFENDANTS in or about September 2017 as a part-time physician assistant ("PA"), making her an employee within the meaning of Title VII.

18. In or around December 2017, NGUYEN (in addition to her job as a PA) reluctantly took over as the Med Spa manager after Loren Smith, DR. SMITH's brother and office manager, pleaded with her to help him out after the departure of the previous Med Spa manager (who was rumored to be a having a sexual relationship with DR. SMITH).

19. That same month, NGUYEN attended her first Christmas party for the company. NGUYEN observed that many of the other female employees were wearing very sexy and revealing outfits. She quickly realized that this reflected the culture of what DR. SMITH expected the women to dress like at office parties. DR. SMITH would use these parties to dance and flirt with female employees.

20. In or around late 2017 or early 2018, NGUYEN went to the operating room ("OR") to ask DR. SMITH about how injectables were entered into his bookkeeping records, so she could keep track of the exact revenue the injectors were making (information that would benefit DR. SMITH's practice). Instead of responding as a reasonable boss would when an employee is trying to improve his business, DR. SMITH belittled, demeaned, and humiliated NGUYEN in front of the entire OR staff.

21. NGUYEN was very upset and embarrassed by this treatment, so she sent DR. SMITH a text message letting him know how she felt. DR. SMITH responded with a half-hearted apology for his behavior and continued his harsh treatment of NGUYEN.

22. In or around early 2018, DR. SMITH called NGUYEN into the OR and again belittled and demeaned her.

23. DR. SMITH's demeaning conduct continued throughout 2018 and was heightened in the few weeks leading up to his wedding in or around September of 2018. DR. SMITH was described during this time by office employees as being an "overall tyrant."

24. In or around October of 2018, DR. SMITH called NGUYEN, late at night while she was at home, and screamed at her for several minutes after she traveled to evaluate new med spa equipment for the company (after receiving permission from the new office manager, Kristine Maxwell).

25. NGUYEN was so upset and distraught from the call that she resigned the next day at work. As a result of her resignation, DR. SMITH became so angry that he had her escorted off his property and told her to never step foot on the property again.

26. Days later, DR. SMITH asked all the employees if he should bring NGUYEN back. His employees answered in the affirmative. Reluctantly, and because NGUYEN liked her coworkers and they wanted her back, she returned to work for DR. SMITH.

. . .

. . .

27. In or around January 2019, DR. SMITH's wife decided she wanted to run the Med Spa, so NGUYEN was forced to step aside. In a discussion with DR. SMITH about NGUYEN no longer running the Med Spa, DR. SMITH falsely stated that NGUYEN just took over the Med Spa and was never asked to run it.

28. Early on in or around the summer of 2019, NGUYEN had a Cellfina treatment scheduled at DR. SMITH's office. When NGUYEN arrived at the office and began setting up the OR for the Cellfina treatment, she went into the office closet to get the Cellfina kit and found a former employee, who DR. SMITH was previously sexually involved with, hiding in the closet.

29. The other employees working that day were told by DR. SMITH that they would be fired if they told anyone that the former employee was at the office that day.

30. DR. SMITH was hiding her from the office manager and NGUYEN, as the employee had been previously fired.

31. On or about August 20, 2019, DR. SMITH referred one of his surgical patients to NGUYEN. DR. SMITH wanted NGUYEN to inject Kybella, a dangerous injection, into the patient's tear trough to dissolve some of Dr. Smith's overcorrection.

32. NGUYEN had never performed this technique in that area before. After getting advice from other professionals with Kybella experience and speaking to the medical liaison for Kybella (who did not recommend Kybella be injected in the tear trough), NGUYEN decided against performing the injection as a precaution for the patient's safety.

33. As a result, DR. SMITH got extremely angry at NGUYEN and called her "lazy" and said she did not want to learn.

34. In or around October of 2019, at the company Halloween party that took place at a strip club, DR. SMITH, without permission, grabbed NGUYEN's butt and thrust her towards him. He also told her that she looked "sexy."

. . .

35. DR. SMITH then put his arm around NGUYEN and another employee and walked around the club with them. NGUYEN managed to get away from DR. SMITH and called an Uber to go home.

36. After NGUYEN went outside to call an Uber, the other employee he had his arm around came outside distraught that DR. SMITH stuck his tongue down her throat without her permission.

37. In or around February 2020, after returning from vacation, NGUYEN was forced to confront DR. SMITH after he decided to move her assistant to the surgery side of the office.

38. DR. SMITH assigned a new assistant to NGUYEN who did not show up for work because she did not want to be NGUYEN's assistant. NGUYEN was upset because she had a very busy day and had not been given notice that her assistant was moved to the other side of the office (Surgery side).

39. NGUYEN had spent a lot of time training her previous assistant and was now faced with training a new assistant. During their conversation, in which NGUYEN expressed her frustration with the move, DR. SMITH told her that she looked "sexy" and wanted to know what she had being doing for her figure.

40. Then, on or about February 20, 2020, while NGUYEN was doing a work presentation for a product, DR. SMITH came into the presentation room from the OR and again stated in front of several employees that she looked "sexy" in the dress she was wearing.

41. On or about June 17, 2020, DR. SMITH's prior rhinoplasty patient was placed on NGUYEN's schedule for nose filler.

42. When NGUYEN took the patient back to her injection room, the patient immediately expressed to NGUYEN that she wanted to see DR. SMITH because he told her that he would surgically repair her nose if the depression returned.

43. When NGUYEN went to talk to DR. SMITH about this patient's request, he again got extremely mad at her for not treating the patient. DR. SMITH yelled at her, called her "lazy," and

1  spoke down to her while they were both with the patient.

2  44. NGUYEN returned to her treatment room and had a patient in her chair that she was about to 3 inject when her assistant knocked on the door and told her DR. SMITH wanted to talk to her. She 4 excused herself from her patient and met DR. SMITH at the checkout counter.

5  45. During that encounter, DR. SMITH began yelling at NGUYEN and telling her that she 6 should have taken care of the patient. He listed several other surgeons who would not have had to do 7 that. He told NGUYEN that she should have taken care of the patient and continued to berate her.

8  46. NGUYEN had to sit down for approximately fifteen (15) minutes to get her hands to stop 9 shaking. She apologized to her patient for having to hear DR. SMITH yell at her.

10  47. NGUYEN ultimately resigned roughly a month later on July 15, 2020.

## FIRST CLAIM FOR RELIEF

### Hostile Work Environment Sexual Harassment – Title VII

*NGUYEN Against all Defendants*

48. Paragraphs 1 through 47 are specifically included and incorporated as though fully set forth herein.

49. NGUYEN was: (1) subjected to verbal abuse and insults as well as verbal and physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe and pervasive to alter the conditions of employment and create an abusive work environment in violation of Title VII.

50. DR. SMITH, as owner of ENTITY DEFENDANTS and employer to NGUYEN, subjected NGUYEN to repeated verbal and physical sexual harassment.

51. Specifically, as detailed above, DR. SMITH's conduct included commenting on how good NGUYEN looked by calling her sexy on multiple occasions in front of coworkers and grabbing her butt and thrusting himself onto her.

. . .

52. DR. SMITH also belittled, demeaned, and humiliated NGUYEN in front of her coworkers on countless occasions, as set forth in THE facts above.

53. The harassment suffered by NGUYEN was because of her sex since male employees were not subject to sexual harassment by DR. SMITH.

54. NGUYEN subjectively perceived the working environment to be hostile and/or abusive, as shown by the facts set forth above and her ultimate decision to resign.

55. Additionally, a reasonable woman and/or victim would consider NGUYEN's work environment to be objectively hostile and/or abusive.

56. ENTITY DEFENDANTS, by and through office manager Kristine Maxell, knew, or should have known, of the sexually charged and abusive hostile work environment caused by DR. SMITH and took no action to stop or prevent any of the unwanted and inappropriate conduct despite having prior notice of similar behavior and complaints.

57. At all times relevant to NGUYEN's allegations in this Complaint, DR. SMITH was acting within the course and scope of his employment as owner of ENTITY DEFENDANTS.

58. ENTITY DEFENDANTS are liable for acts and omissions of DR. SMITH.

59. As a direct and proximate result of Defendants' conduct, by and through DR. SMITH, NGUYEN has suffered, and continues to suffer, irreparable injury and monetary damages in the form of past, present, and future lost earnings and other benefits.

60. NGUYEN is also entitled to liquidated damages as a result of Defendants' conduct.

61. Defendants' conduct, by and through DR. SMITH, was willful, intentional, oppressive, malicious, and done with wanton and reckless disregard for NGUYEN's rights.

62. As a result of Defendants' conduct, by and through DR. SMITH, NGUYEN has been required to retain the services of an attorney and, as a direct and foreseeable result, has been damaged and is entitled to reasonable attorney's fees and costs.

. . .

## SECOND CLAIM FOR RELIEF

### Civil Battery

*NGUYEN Against all Defendants*

63. Paragraphs 1 through 62 are specifically included and incorporated as though fully set forth herein.

64. DR. SMITH willfully and unlawfully used force and/or violence upon NGUYEN causing her to feel apprehension of harmful and/or offensive contact when DR. SMITH unlawfully engaged in these and/or lascivious sexual acts on NGUYEN by grabbing her butt and thrusting himself onto her at a Halloween party.

65. At no time did NGUYEN consent to these acts.

66. DR. SMITH intended to cause NGUYEN to feel apprehension of harmful and/or offensive contact when DR. SMITH unlawfully engaged in these lewd acts.

67. DR. SMITH's harmful and/or offensive contact in performing these lewd acts on NGUYEN did occur.

68. As a direct and proximate result of DR. SMITH's battery, NGUYEN sustained, *inter alia*, great emotional distress, injuries, bodily trauma, pain and suffering, and other related damages, some or all of which may be permanent and/or disabling in nature.

69. DR. SMITH's acts were wanton, indifferent, malicious, and done with a conscious and reckless disregard for NGUYEN's health, safety, and rights. Moreover, the acts of DR. SMITH in this cause of action were in derogation, exclusion and/or defiance of NGUYEN's rights.

70. Therefore, NGUYEN should be entitled to punitive damages.

71. At all times relevant hereto, DR. SMITH was an owner and/or employee of ENTITY DEFENDANTS and was acting in the course of his ownership and/or employment. Thus, ENTITY DEFENDANTS are vicariously liable for the conduct of DR. SMITH.

. . .

72. NGUYEN has been required to retain an attorney to prosecute this matter and is entitled to an award of reasonable attorney's fees and costs incurred herein.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for a judgment in favor of Plaintiff and against Defendants as follows:

1. Awarding damages pursuant to 42 U.S.C. § 2000e, *et seq*.;

2. Awarding compensatory damages;

3. Awarding liquidated damages;

4. Awarding punitive damages;

5. Awarding pre-judgment interest, at the highest rate allowable by law;

6. Awarding reasonable attorney fees and costs of suit; and

7. For any such further relief this Court deems appropriate in the premises.

DATED this 9th day of February, 2021.

**LAGOMARSINO LAW**

_____
ANDRE M. LAGOMARSINO, ESQ. (#6711)
CORY M. FORD, ESQ. (#15042)
3005 W. Horizon Ridge Pkwy., #241
Henderson, Nevada 89052
Telephone: (702) 383-2864
Facsimile: (702) 383-0065
*Attorneys for Plaintiffs*

**JURY DEMAND**

PLEASE TAKE NOTICE that Plaintiff, by and through her undersigned attorneys, hereby demands a jury trial of all issues in the above-referenced matter.

DATED this 9th day of February, 2021.

LAGOMARSINO LAW

_____
ANDRE M. LAGOMARSINO, ESQ. (#6711)
CORY M. FORD, ESQ. (#15042)
3005 W. Horizon Ridge Pkwy., #241
Henderson, Nevada 89052
Telephone: (702) 383-2864
Facsimile: (702) 383-0065
*Attorneys for Plaintiffs*